IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

DENISE MARKHAM and MARION MORGAN, )
on behalf of themselves, and all )
others similarly situated, )
                                )
                  Plaintiffs, )
                                )       No. 95 C 2065
         v.                          )
                                )       Judge Joan Humphrey Lefkow
FRANCIS E. WHITE, MELVIN O. )
SCHABILION, MICHAEL FLANAGAN, SAUL )
"BUDDY" WEINSTEIN, and NORBERT )
KUKSTA, and Other Unknown )
Defendants, in their individual )
capacities, )
                                )
                  Defendants. )

**DOCKETED**
JUN  5 2002

## NOTICE OF FILING

TO:     Cynthia Giaccheti, Esq.               David P. Schippers
          Law Offices of Cynthia Giaccheti      Schippers & Bailey
          53 West Jackson Boulevard           20 North Clark Street
          Chicago, IL 60604                    Chicago, IL 60602

          Debra L. Roth
          Shaw, Bransford, Veilleux & Roth
          1100 Connecticut Avenue, NW
          Suite 900
          Washington, D.C. 20006

      PLEASE TAKE NOTICE that on June 4, 2002, the undersigned filed with the
Clerk of the United States District Court, **PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT AND AWARD OF ATTORNEY'S
FEES AND COSTS**, a true and correct copy of which is hereby served upon you.

                                     Jeffrey I. Cummings, One of the
                                     Attorneys for the Class

MINER, BARNHILL & GALLAND, P.C.
14 West Erie Street
Chicago, IL 60610
(312) 751-1170

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DENISE MARKHAM, and MARION MORGAN, )<br>on behalf of themselves, and all )<br>others similarly situated, )<br> )<br>          Plaintiffs, )<br> )<br> )<br>    v. )<br> )<br>FRANCIS E. WHITE, MELVIN O. )<br>SCHABILION, MICHAEL FLANAGAN, SAUL )<br>"BUDDY" WEINSTEIN, NORBERT KUKSTA, )<br>and Other Unknown Defendants, in their )<br>individual capacities, )<br> )<br>          Defendants. ) | Case No. 95 C 2065<br><br>Judge Joan Humphrey Lefkow<br><br>**DOCKETED**<br>JUN  5 2002 |

## PLAINTIFFS MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND AWARD OF ATTORNEY'S FEES AND COSTS

Plaintiffs moves this Court for final approval of their proposed class action settlement and award of attorney's fees and costs. For the reasons set forth in the attached memorandum, plaintiffs believe that the settlement is fair, reasonable, and adequate, and that the Court should approve the settlement in all respects.

Respectfully submitted,

_____
Jeffrey I. Cummings. One of the
Attorneys for the Class.

MINER, BARNHILL & GALLAND
14 West Erie Street
Chicago, IL 60610
(312) 751-1170



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DENISE MARKHAM, and MARION MORGAN, )
on behalf of themselves, and all )
others similarly situated, )
)
                       Plaintiffs, )
)      Case No. 95 C 2065
           v. )
)      Judge Joan Humphrey Lefkow
FRANCIS E. WHITE, MELVIN O. )
SCHABILION, MICHAEL FLANAGAN, SAUL )
"BUDDY" WEINSTEIN, NORBERT KUKSTA, )
and Other Unknown Defendants, in their )
individual capacities, )
)
                 Defendants. )

**MEMORANDUM IN SUPPORT OF PLAINTIFFS MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND AWARD OF ATTORNEY'S FEES AND COSTS**

      Plaintiffs submit this memorandum in support of their motion for final approval of their

proposed class action settlement and award of attorney's fees and costs. For the reasons set forth

below, plaintiffs believe that the settlement is fair, reasonable, and adequate, and that the Court

should approve it in all respects.

## I.    PROCEDURAL BACKGROUND

      On April 5, 1995, plaintiffs Denise Markham, Marion Morgan, and Mary Lou

Ricksecker, police officers employed by the City of Madison, Wisconsin, began this lawsuit by

filing a class action complaint against the United States Drug Enforcement Administration

("DEA"), the United States, and the individual defendants (DEA agents Francis E. White,

Melvin O. Schabilion, Michael Flanagan, Saul "Buddy" Weinstein, and Norbert Kuksta, herein

referred to as "the Individual Defendants"). In their complaint, plaintiffs alleged that the Individual Defendants: (1) conspired to, and repeatedly did, subject the plaintiffs and other female seminar participants to offensive and intimidating conduct on account of their sex during the course of DEA-sponsored drug training seminars directed by them, and (2) ignored complaints about the offensive conduct by the plaintiffs and the others, refused to desist from the said conduct, and destroyed written seminar evaluations on which many of the women's complaints were registered. Plaintiffs alleged that defendants' actions denied them and other similarly situated female participants the equal protection of the laws guaranteed them by the Due Process Clause of the Fifth Amendment United States Constitution and 42 U.S.C. §1985(3) by denying them access to the training benefits equal to those provided their male counterparts, and that the actions caused them emotional distress. Plaintiffs sought damages and injunctive relief on behalf of themselves and a class of other women who were subjected to harassment at defendants' seminars.

The United States and the DEA (herein referred to jointly as "the Government Defendants") moved early in the case for dismissal on sovereign immunity grounds. The motion was granted and the Government Defendants were dismissed from the action as defendants, subject only to future appeal. Shortly after the lawsuit was filed, however, the Government disciplined every one of the Individual Defendants (by measures ranging from reprimand to suspension to recommended termination) based on the conduct complained of by the named plaintiffs and other women.

The Individual Defendants defended against the lawsuit, in the meantime, by denying the plaintiffs' allegations, filing successive motions to dismiss and motions for judgment on the

-2-

pleadings, vigorously opposing plaintiffs' motion for class certification, moving for summary judgment based on qualified immunity, taking interlocutory appeal from the denial of that motion to the Court of Appeals, and finally, moving to decertify the class. (*See Markham v. White*, 69 F.E.P. Cases 558 (N.D.Ill. 1995)(motion to dismiss); *Markham v. White*, 1996 WL 167329 (N.D.Ill. 1996)(denying motion to dismiss); *Markham v. White*, 1996 WL 445887 (N.D.Ill. 1996)(denying motion for judgment on the pleadings); *Markham v. White*, 172 F.3d 486 (7th Cir. 1999)(affirming district court's denial of summary judgment on interlocutory appeal)). In addition, the Individual Defendants sued the named plaintiffs and their counsel for defamation in Wisconsin Circuit Court in *Kuksta v. Markham*, No. 97 CV 2652, case code 30106 (Wis.Cir.Ct.) For the most part, the Individual Defendants' efforts were unsuccessful.

In January 1997, the district court certified a Rule 23(b)(3) class of "all women who have attended DEA training seminars conducted by one or more of the individual defendants since April 5, 1993 and who have been subjected to a sexually hostile training environment by the type of conduct described in the First Amended Complaint," designating plaintiffs Markham and Morgan as named plaintiffs. *Markham v. White*, 171 F.R.D. 217, 224 (N.D.Ill. 1997) and Miner Barnhill and Galland and Amy Scarr as class counsel.[1] In March 1999, the Court of Appeals affirmed the district court's denial of the Individual Defendants' qualified immunity summary judgment motion. 172 F.3d 486. And in September 1999, this Court denied the Individual Defendants' motion to decertify. *Markham v. White*, 1999 WL 1072647 (N.D.Ill.

---

[1] The claim of named plaintiff Mary Lou Ricksecker was dismissed with prejudice on the grounds that it was filed after the expiration of the applicable two-year statute of limitations.

1999)[2]  The Wisconsin Circuit Court proceedings in *Kuksta v. Markham* were stayed pending the resolution of the class action.

Accordingly, the parties proceeded with extensive discovery, including nearly 40 depositions of seminar participants (male and female), the Individual defendants, and United States government officials, and third parties and multiple interrogatories and requests for production (including approximately 18 sets of interrogatories and document requests served on the absent class members).  In addition, the plaintiffs retained an expert psychologist who produced a full report pursuant to Fed.R.Civ.P. Rule 26(e), multiple motions to compel were filed, briefed, and argued, and the plaintiffs worked exhaustively to locate, communicate with, and provide discovery from each and every woman identified in the Government records as having attended the seminars during the class period.  Of all the women thus identified and located, a total of 15 women, including the named plaintiffs, asserted claims for compensatory damages.

## II.    THE SETTLEMENT PROCESS

In late summer 2000, after discovery was completed and the number of claimants thus ascertained, plaintiffs took two steps.  They initiated settlement discussions with the Individual Defendants, and, along with two class members who had raised their claims in time to file under the Federal Tort Claims Act, the two named plaintiffs filed independent federal tort actions in the Western District of Wisconsin and the District of Minnesota, respectively.  *Markham v. United States*, No. 00 C 0636 (E.D.Wis.) and *Umpierre v. United States*, No. 00-2438 PAM/JGL (D.Minn.).

---

[2] By the same Order, the Court approved the form of class notice to be sent to the class pursuant to Fed.R.Civ.P. Rule 23(c)(2). *Id.*

The settlement discussions were, in effect, a renewal of earlier, unsuccessful settlement efforts supervised by the Seventh Circuit Court of Appeals Settlement Office in 1998 while the Individual Defendants' interlocutory appeal was pending. To facilitate the second-round talks by securing a contribution to settlement from the dismissed Government Defendants, plaintiffs proposed a three-way settlement structure with participation from the Government (which, while subject to appeal from its dismissal from the class action, viewed its primary exposure as arising from the Wisconsin and Minnesota FTCA actions) and the Individual Defendants. The parties agreed that it served all of their interests to add the Government's resources to those of the Individual Defendants to make settlement possible, and the Defendants all therefore agreed to waive the right to require an election by plaintiffs as between their *Bivens* and FTCA remedies. Seventh Circuit Settlement Office Attorney Roger Wenthe agreed to act as mediator.

The negotiations took more than a year, partly in consequence of the number of parties with divergent interests and claims, and partly because one of the defendants (defendant Weinstein) brought in new counsel on two separate occasions and, for the first time in the lawsuit, asserted cross-claims for contribution against his four co-defendants. Ultimately, the Defendants agreed to contribute a total of $275,250 to settle the class action and the FTCA actions together: $75,000 from the Government, and $200,250 from the Individual Defendants. The Individual Defendants and the plaintiffs agreed further to release each other (and the plaintiffs' counsel) from all claims asserted against them. These released claims include all claims for damages, attorney's fees, and costs asserted by plaintiffs and their counsel against the Individual Defendants in this class action, Defendant Weinstein's cross-claim for contribution against the other four Defendants, and the claims brought by the five Individual Defendants

-5-

against the named plaintiffs and their counsel in *Kuksta v. Markham, supra*. (Note with respect to this last release that plaintiffs' counsel took the position with the defendants and Mediator Wenthe throughout the mediation that they would not include the Wisconsin claims against them and the named plaintiffs as part of the settlement discussions until sufficient settlement monies were committed to resolve the class members' claims.)

## III. VALUATION OF CLASS CLAIMS

The first step toward this goal was for class counsel to determine, based on evaluation of the strengths and weakness of each individual claim (*e.g.*, whether an individual was a direct target of the alleged harassment, whether the harassment was severe, the degree to which the individual suffered distress, and whether she sought counseling as a result), and the level of participation in the lawsuit of each of the class members (*e.g.*, whether they provided testimony by affidavit, by deposition, and/or participated by other means), reasonable settlement values for each of the class claims. Toward this end, plaintiffs' counsel developed criteria for calculating the value of each individual claim in February 2001 and, once having completed the calculations, disclosed directly to every one of the claiming class members the proposed settlement value of her claim, the method used to arrive at the valuation, and the range of claim values that method had generated for the class overall. *See* Cummings Declaration (Exhibit 1, ¶18). Counsel further obtained from each individual claimant her consent to the settlement amount proposed on her behalf. Id.[3] It was only after plaintiffs had secured combined commitments from Defendants

---

[3] These are the individual class member awards arrived at by plaintiffs' counsel and agreed to by each individual class member in February 2001. (One class member in Reno, Nevada, Edye Washington, agreed to her award a year later.)

**Named Plaintiffs**
Denise Markham                    $40,000.00

sufficient to cover the sum of those individual recoveries (leaving settlement of attorney's fees

and costs the only remaining issue for negotiation) that counsel agreed to consider releases in the

*Kuksta v. Markham* case as an element of settlement.

The settlement thus allocates to the class aggregate damages of $132,000 (of which more

than half is supplied by the Government's $75,000 contribution to settle the FTCA claims), the

sum of individual settlement amounts each claiming class member has already approved. The

remainder ($143,250) is allocated toward reimbursement to plaintiffs' counsel of their litigation

costs and their attorneys' fees. With respect to these allocations, the settlement represents a steep

discount of the fees actually incurred. Plaintiffs' out-of-pocket costs alone totaled $57,542.21.

Their counsel's lodestar (not including paralegal fees) – calculated at the rates in effect when the

| | |
|---|---|
| Marion Morgan | 25,000.00 |
| **FTCA Plaintiffs** | |
| Elissa Umpierre | 8,000.00 |
| Evangeline Devlin | 7,000.00 |
| **Remaining Claiming Class Members** | |
| Kimberly McGovern | 11,000.00 |
| (Formerly Travis) | |
| Shannon Schepp | 10,000.00 |
| Tina Virgil | 7,000.00 |
| Denise Bechtold | 5,000.00 |
| Amy Blackwood | 5,000.00 |
| Kathy Franko | 5,000.00 |
| Edye Washington | 5,000.00 |
| Gloria Anderson | 1,000.00 |
| Mary Hodge | 1,000.00 |
| Mary Byrne | 1,000.00 |
| Sheila Fulks | 1,000.00 |

Id.

settlement was negotiated – is $808,230. Cummings Declaration (Exhibit 1, ¶23). (The lodestar is substantially higher ($902,302.50) if MBG's current rates are used. Ex. 1, ¶23).

## IV. NO OBJECTIONS WERE FILED PURSUANT TO NOTICE OF CLASS ACTION SETTLEMENT

Individual notice of the settlement, explaining its terms, specifying the individual awards to claiming class members, and setting out the class member's right to object and the procedure for doing so, was mailed directly to every class member (including class members who did not assert claims and were therefore receiving no award under the settlement). Exhibit 1, ¶25. Returned notices were successfully remailed. The class members had 6 weeks to object. No objections have been filed. *Id*.

## V. OPINION OF CLASS COUNSEL

Given the nature of the proceedings, the value of the class claims, the dismissal of the only well-resourced defendants (the United States and the DEA) leaving only the Individual Defendants to satisfy a judgment after trial, the significant remedial measures already taken by the Government against the Individual Defendants, and the general risks of litigation, class counsel concluded, having secured sufficient settlement funds to cover the damage claims by the class claimants, there was no benefit for the class in continuing the litigation. Ex. 1, ¶26. Since, in the opinion of class counsel, doing so would serve at best to recover a greater portion of counsel's attorneys' fees than counsel had been able to negotiate in settlement, the risks and burdens such litigation would impose on the class (and even on class counsel) would be unproductive and unjustified. *Id*. Class counsel submit, accordingly, that the settlement

(including its modest provisions for attorneys fees and the reimbursement of counsel's costs) is fair and reasonable and should be approved. *Id.*

## ARGUMENT

A.    Legal Standard For Preliminary Approval Of Class Action Settlement.

In ruling upon a class action settlement, the Court must determine whether the compromise, taken as a whole, is fair, reasonable and adequate. *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). Underlying this standard "is the general policy favoring voluntary settlements of class action disputes." *EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888-89 (7th Cir. 1985), *cert denied*, 478 U.S. 1004 (1986); *see also Isby*, 75 F.3d at 1196 ("[f]ederal courts naturally favor the settlement of class action litigation"). Accordingly, the Court will "consider the facts in the light most favorable to the settlement." *Isby*, 75 F.3d at 1199 (quotations omitted). A district court's approval of a class action settlement is reversible only for abuse of discretion. *Id.* at 1196.

B.    The Settlement Is Fair, Reasonable And Adequate And Should Be Approved.

The Seventh Circuit has identified several factors relevant to whether a settlement is fair, reasonable, and adequate. These include "the strength of plaintiffs' case compared to the amount of defendants' settlement offer, an assessment of the likely complexity, length and expense of the litigation, an evaluation of the amount of opposition to settlement among affected parties, the opinion of competent counsel, and the stage of the proceedings and the amount of discovery completed at the time of settlement." *Isby*, 75 F.3d at 1199 (citing *Hiram Walker*, 768 F.2d at 889); *see also Gilbert v. First Alert, Inc.*, 1998 WL 142406, at *1 (N.D.Ill. 1998); *Williams v.*

*General Electric Capital Auto Lease*, 1995 WL 765266, at \*3 (N.D.Ill. 1995). Each of these factors weighs heavily in support of the settlement here.

First, as noted, the relief secured for the claiming class members is significant. The awards are well within the range of awards for compensatory damages that have been upheld by the Seventh Circuit in comparable cases. *See Webb v. City of Chester*, 813 F.2d 824, 836-37 & n.4 (7th Cir. 1987)(citing to cases where damages awards under '1983 for embarrassment, humiliation, and emotional distress resulting from wrongful firings "ranged from a low of $500 to a high of over $50,000"). Here, the class members have been informed of their own awards and the range of awards allocated to the plaintiffs and other class members, and consented in every case to the allocation for their claims.

Second, continued litigation of the plaintiffs' claims at trial would be complex, lengthy, and costly. The trial could last weeks, witnesses would have to travel to Chicago from all over the Midwest and beyond, and the issues of conspiracy, relative culpability among the defendants, and the valuation of compensatory and punitive damages would present both difficult and complex problems for the plaintiffs.

Third, plaintiffs would have to reverse this Court's dismissal (on sovereign immunity grounds) of the Government defendants on appeal in order to pursue relief from the federal treasury, and will otherwise be required to collect on any judgment after trial from the personal resources of the Individual Defendants. (The Government has refused to indemnify the individual defendants for either the cost of defense or liability). While plaintiffs' counsel are prepared to pursue these avenues absent settlement, the Defendants' agreement to provide

-10-

sufficient monies to compensate the claiming class members for their injuries and pay a portion of counsel's fees makes settlement plainly the more rationale course.

Fourth, it is significant, not a single class member has filed an objection. This factor weighs strongly in favor of Court approval. *See, e.g., First Alert*, 1998 WL 142406 at *1("Since none of the 7,900 class members notified of the Settlement has challenged its fairness, our discussion of the fairness of the settlement will be brief."); *see also Boggess v. Hogan*, 410 F. Supp. 433, 438 (N.D.Ill. 1975).

Finally, the Court is "entitled to give consideration to the opinion of competent counsel that the settlement [is] fair, reasonable, and adequate." *Isby*, 75 F.3d at 1200. [full cite] Class Counsel here fully support the Settlement despite the steeply reduced fee it provides for their services. Indeed, in light of the extensive discovery undertaken by the parties, the comprehensive review of the legal issues before this Court and the Court of Appeals, and the direct consent of every claiming class member to the settlement award allocated to her, Class Counsel have a more than sufficient basis on which to evaluate the merits of the Settlement and judge it fair, reasonable and adequate.

## CONCLUSION

For all of the above reasons, plaintiffs respectfully request that this Court five final approval to the class action settlement and approve the proposed award of attorney's fees and costs.

Respectfully submitted,

Jeffrey U. Cummings. One of the
Attorneys for the Class.

MINER, BARNHILL & GALLAND
14 West Erie Street
Chicago, IL 60610
(312) 751-1170

-12-

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DENISE MARKHAM, and MARION MORGAN, )
on behalf of themselves, and all )
others similarly situated, )
                              )
                  Plaintiffs, )
                              )        Case No.: 95 C 2065
              v. )
                              )        Judge Joan Humphrey Lefkow
FRANCIS E. WHITE, MELVIN O. )
SCHABILION, MICHAEL FLANAGAN, SAUL )
"BUDDY" WEINSTEIN, NORBERT KUKSTA, )
and Other Unknown Defendants, in )
their individual capacities, )
                              )
                  Defendants. )

## DECLARATION OF JEFFREY CUMMINGS IN SUPPORT
## OF MOTION FOR FINAL APPROVAL OF CLASS ACTION
## SETTLEMENT, AND AWARD OF ATTORNEY'S FEES AND COSTS

I, Jeffrey I. Cummings, under oath, declare as follows:

1.      I am a member of the firm Miner Barnhill & Galland ("MBG"), and one of the attorneys for the class in the above matter. This affidavit is submitted in support of the proposed class action settlement, including its provision for attorney's fees to class counsel (attorneys from MBG and attorney Amy Scarr served together as class counsel). While the details explaining the proposed settlement are set forth below, counsel support the settlement, and have agreed to discount their lodestar significantly in order to make it possible, because it provides what counsel believe is full relief to compensate the injuries suffered by the class. Direct notice of the settlement was given to every member of the class, explaining the terms of the settlement the



PLAINTIFF'S
EXHIBIT

_____/_____

manner in which the settlement funds would be distributed, the class member's right to object to the settlement and the procedure for doing so.  As the 6-week objections period having expired, and no objections have been filed, counsel request that this Court grant final approval of the settlement and approve their award for attorney's fees and costs.

2.     As the motion for preliminary approval described, the class action was filed by the plaintiffs on April 5, 1995, against the United States Drug Enforcement Administration ("DEA"), the United States, and the individual defendants (DEA agents Francis E. White, Melvin O. Schabilion, Michael Flanagan, Saul "Buddy" Weinstein, and Norbert Kuksta, herein referred to as "the Individual Defendants"), a conspiracy to injure (and injuring) the plaintiffs and the class by creating a sexually hostile training environment and DEA sponsored training seminars in violation of the Fifth Amendment. Plaintiffs sought damages and injunctive relief for the plaintiffs and other women who were subjected to harassment at defendants' seminars.

3.     Shortly after the lawsuit was filed, the Government disciplined every one of the Individual Defendants based on the conduct complained of by the named plaintiffs and other women at the seminars.

4.     While the Government Defendants were dismissed from the action early in the case on sovereign immunity grounds, the case proceeded against the Individual Defendants, who defended this case by denying the plaintiffs' allegations, filing successive motions to dismiss and motions for judgment on the pleadings, vigorously opposing plaintiffs' motion for class certification, moving for summary judgment based on qualified immunity, taking interlocutory appeal from the denial of that motion to the Court of Appeals, and finally, moving to decertify the class. (*See Markham v. White*, 69 F.E.P. Cases 558 (N.D.Ill. 1995)(motion to dismiss);

-2-

*Markham v. White*, 1996 WL 167329 (N.D.Ill. 1996)(denying motion to dismiss); *Markham v. White*, 1996 WL 445887 (N.D.Ill. 1996)(denying motion for judgment on the pleadings); *Markham v. White*, 172 F.3d 486 (7th Cir. 1999)(affirming district court's denial of summary judgment on interlocutory appeal)).

5.     For the most part, the Individual Defendants' efforts were unsuccessful: in January 1997, the district court certified a Rule 23(b)(3) class of "all women who have attended DEA training seminars conducted by one or more of the individual defendants since April 5, 1993 and who have been subjected to a sexually hostile training environment by the type of conduct described in the First Amended Complaint;" in March 1999, the Court of Appeals affirmed the district court's denial of the Individual Defendants' qualified immunity summary judgment motion; and in September 1999, this Court denied the Individual Defendants' motion to decertify.  The Wisconsin Circuit Court proceedings in *Kuksta v. Markham* were stayed pending the resolution of the class action.

6.     In addition to the motions and appeals described above, the parties conducted extensive discovery over the course of the lawsuit, including nearly 40 depositions of seminar participants (male and female), the Individual defendants, and United States government officials, and third parties and multiple interrogatories and requests for production (including approximately 18 sets of interrogatories and document requests served on the absent class members).  In addition, the plaintiffs retained an expert psychologist who produced a full report pursuant to Fed. R. Civ. P. Rule 26(e), multiple motions to compel were filed, briefed, and argued, and the plaintiffs worked exhaustively to locate, communicate with, and provide discovery from each and every woman identified in the Government records as having attended

the seminars during the class period.

7.     Of all the women thus identified and located, a total of 15 women, including the named plaintiffs, asserted claims for compensatory damages.  Others either opted out of the lawsuit by filing an opt-out statement in response to a Court-approved notice of class action, advised counsel that they did not wish to assert a claim, or testified in deposition to the same effect.

8.     In late summer 2000, after discovery was completed and the actual claimants thus ascertained, plaintiffs took two steps.  They initiated settlement discussions with the Individual Defendants, and, along with two class members who had raised their claims in time to file under the Federal Tort Claims Act, they filed independent federal tort actions in the Western District of Wisconsin and the District of Minnesota, respectively. *Markham v. United States*, No. 00 C 0636 (E.D.Wis.) and *Umpierre v. United States*, No. 00-2438 (D.Minn.).

9.     The settlement discussions were, in effect, a renewal of earlier, unsuccessful settlement efforts supervised by the Seventh Circuit Court of Appeals Settlement Office in 1997, while the Individual Defendants' interlocutory appeal was pending.  The Government had refused to participate in this first round of negotiations.

10.     To facilitate the second-round talks, plaintiffs proposed a three-way settlement structure with participation from the Government (which, while subject to appeal from its dismissal from the class action, viewed its primary exposure as arising from the Wisconsin and Minnesota FTCA actions) and the Individual Defendants as it served the interests of all parties to add the Government's resources to those of the Individual Defendants to make settlement possible.

11.     This time, the Government agreed to participate, and with the Individual Defendants, agreed further to waive the right to require an election by plaintiffs' as between their *Bivens* and FTCA remedies.

12.     Seventh Circuit Settlement Office Attorney Roger Wenthe agreed to act as mediator.

13.     The negotiations took more than a year, partly in consequence of the number of parties with divergent interests and claims, and partly because one of the defendants (Defendant Weinstein) brought in new counsel on two separate occasions and, for the first time in the lawsuit, asserted cross-claims for contribution from his four co-defendants.

14.     Ultimately, the Defendants (including the Government Defendants) agreed to contribute a total of $275,250 to settle the pending actions:  $75,000 was committed by the Government in settlement of the FTCA claims, and a total of $200,250 from the Individual Defendants.

15.     The Individual Defendants and the plaintiffs agreed further to release each other (and the plaintiffs' counsel) from all claims asserted against them, including all claims for damages, attorney's fees, and costs asserted by plaintiffs and their counsel against the Individual Defendants in this class action, defendant Weinstein's cross-claim for contribution against the other four Defendants, and the claims brought by the five Individual Defendants against the named plaintiffs and their counsel in *Kuksta v. Markham.*

16.     Note with respect to this last release that Plaintiffs' counsel took the position with the Defendants and Mediator Wenthe throughout the mediation that they would not include the Wisconsin claims against them and the named plaintiffs as part of the settlement discussions until

-5-

sufficient settlement monies were committed to resolve the class members' claims.

17.    The first step toward this goal was for class counsel to determine, based on evaluation of the strengths and weakness of each individual claim and the level of participation in the lawsuit by each one of them, reasonable settlement values for each class member.

18.    Toward this end, as described in the affidavit of Sarah E. Siskind submitted with plaintiffs' motion for preliminary approval of the settlement, class counsel developed criteria for calculating the value of each individual claim in February 2001 and, once having completed the calculations, disclosed directly to every one of the claiming class members the proposed settlement value of her claim, the method used to arrive at the valuation, and the range of claim values that method had generated for the class overall.  The criteria addressed each claimant's experience at the seminars (*e.g.*, whether the individual was a direct target of the challenged harassment, whether the harassment was severe, the degree to which the individual claimant suffered distress and whether she sought counseling as a result) and the level of participation of each claimant in the lawsuit (*e.g.*, whether she assumed plaintiff responsibilities, whether she gave testimony by affidavit or deposition, whether she attended settlement conferences and/or participated in the lawsuit by other means), and whether she suffered in her relations with fellow officers as a result of her participation.

19.    In each case, the individual class members authorized class counsel to negotiate toward the proposed goal for their individual recovery.

20.    The following individual class member awards were thereby arrived at by plaintiffs' counsel, agreed to by each individual class member, and incorporated into the proposed settlement.

Named Plaintiffs

| | |
|---|---|
| Denise Markham | $40,000 |
| Marion Morgan | 25,000 |

FTCA Plaintiffs

| | |
|---|---|
| Elisa Umpierre | 8,000 |
| Evangeline Devlin | 7,000 |

Remaining Claiming Class Members

| | |
|---|---|
| Kimberly McGovern (Formerly Travis) | 11,000 |
| Shannon Schepp | 10,000 |
| Tina Virgil | 7,000 |
| Denise Bechtold | 5,000 |
| Amy Blackwood | 5,000 |
| Kathy Franko | 5,000 |
| Edye Washington | 5,000 |
| Gloria Anderson | 1,000 |
| Mary Hodge | 1,000 |
| Mary Byrne | 1,000 |
| Sheila Fulks | 1,000 |

21.     After plaintiffs had secured combined commitments from Defendants sufficient to cover the sum of those individual recoveries (leaving settlement of attorney's fees and costs the only remaining issue for negotiation), plaintiffs' counsel agreed to consider releases in the *Kuksta v. Markham* case as an element of settlement.

22.     The settlement thus allocates to the class aggregate damages of $132,000 (of which more than half is supplied by the Government's $75,000 contribution to settle the FTCA claims), the sum of individual settlement amounts each claiming class member has already approved.

23.     The remainder ($143,250) is allocated toward reimbursement to plaintiffs' counsel of their litigation costs and their attorney's fees.  With respect to these allocation, the settlement

represents a steep discount of counsel's fees. Plaintiffs' out-of-pocket costs alone were $56,164.23 (for MBG) and $1,377.98 (for Amy Scarr). Their counsel's lodestar (not including paralegal fees) – calculated at the rates in effect when the settlement was negotiated – was $657,257.50 for MBG (summary attached as Exhibit A)[1] and $150,972.50 for co-counsel Amy Scarr (summary attached as Exhibit B). Full time and disbursements records can be produced promptly upon the Court's request.

24.     On April 17, 2002, individual notice of the settlement, explaining its terms, specifying the individual awards to claiming class members, and setting out the class member's right to object and the procedure for doing so, was mailed directly to every class member (including class members who did not assert claims and were therefore receiving no award under the settlement) (Exhibit D)  Returned notices were successfully remailed.

25.     The class members had 6 weeks to voice an objection to the terms of the settlement.  No objections have been filed.

26.     Class counsel believe that settlement along the terms proposed is the best course of action given:  the nature of the proceedings; the value of the class claims; the dismissal of the only well-resourced defendants (the United States and the DEA) leaving only the Individual Defendants to satisfy a judgment after trial; the significant remedial measures already taken by the Government against the Individual Defendants; and the general risks of litigation.  Given that the proposed settlement provides sufficient monies to satisfy the damage claims by the class claimants, there would be no benefit for the class in continuing the litigation as doing so would

---

[1]     MBG's lodestar calculated with the current hourly rates of its attorneys and paralegals is $751,330 (summary attached as Exhibit C).

serve, at best, to recover a greater portion of counsel's attorney's fees than counsel had been able to negotiate in settlement. The risks and burdens such litigation would impose on the class (and even on class counsel) are, in counsel's opinion, unproductive and unjustified.

27.    Class counsel accordingly request the Court to approve the settlement in its entirety, including its allocation for the settled portion of counsel's attorney's fees and costs.

The undersigned states, under penalty of perjury and the laws of the United States, that the foregoing is true and correct to the best of his knowledge. Executed in Chicago, Illinois, on June 4, 2002.

_____
Jeffrey I. Cummings

28 U.S.C. §1746.

5/28/2002                                     MARKHAM.xlsTIME

### #795: Markham :  5/28/2002

Attorney/paralegal time: inception through 4/30/2002

| Atty | Hours | Rate | Fee |
|------|-------|------|-----|
| Galland | 4.5 | $ 325.00 | $ 1,462.50 |
| Miner | 2.0 | $ 325.00 | $ 650.00 |
| Siskind | 1190.5 | $ 310.00 | $ 369,055.00 |
| Cummings | 870.6 | $ 255.00 | $ 222,003.00 |
| Belcaster | 13.2 | $ 205.00 | $ 2,706.00 |
| Mange | 50.1 | $ 175.00 | $ 8,767.50 |
| Shapiro | 18.3 | $ 185.00 | $ 3,385.50 |
| Beyer | 66.3 | $ 165.00 | $ 10,939.50 |
| Eberle | 47.3 | $ 165.00 | $ 7,804.50 |
| Willenson | 81.4 | $ 175.00 | $ 14,245.00 |
| Strauss | 0.3 | $ 285.00 | $ 85.50 |
| Figueredo | 0.8 | $ 165.00 | $ 132.00 |
| Austin | 97.1 | $ 165.00 | $ 16,021.50 |

### TOT ATTY FEES                                              $      657,257.50

| Paralegal | Hours | Rate | Fee |
|-----------|-------|------|-----|
| Choi | 3.3 | $ 80.00 | $ 260.00 |
| Hauge | 9.0 | $ 80.00 | $ 720.00 |
| Howes | 5.8 | $ 80.00 | $ 460.00 |
| Herbsleb | 35.7 | $ 80.00 | $ 2,856.00 |
| Bessette | 4.0 | $ 80.00 | $ 320.00 |
| Giddings | 12.0 | $ 80.00 | $ 960.00 |

### TOT PARALEGAL FEES                                         $        5,576.00

| | | |
|---|---|---|
| Disbursed costs through 4/30/02 | $ | 44,868.83 |
| In-house duplicating through 4/30/02 | $ | 11,295.40 |
| Total Costs | $ | 56,164.23 |


PLAINTIFF'S
EXHIBIT
A

5/28/2002                                    MARKHAM.xlsCost-Summary

5/28/2002
#795:       Markham

Costs & Disbursements: Inception through 4/30/2002

| | |
|---|---|
| Airfare | $ 3,010.00 |
| Meals & Lodgings | $ 1,153.63 |
| Local transportation | $ 1,238.57 |
| Professional Services: | |
|   L Fitzgerald | $10,000.00 |
|   Siegel Brill Greupner Duffy | $ 305.75 |
| Computer: Legal Research | $ 3,839.69 |
| Messenger | $ 1,645.00 |
| Duplicating, Reproduction & | |
|   Graphic Design | $ 2,410.30 |
| Video/Audio Production | $ 437.04 |
| Court Reporting & Transcripts | $15,969.90 |
| Court fees, process server | |
|   fees, subpoena fees | $ 1,594.75 |
| Phone/facs | $ 2,537.72 |
| Record Copy Srvcs | $ 495.50 |
| Miscellaneous | $ 230.98 |
| In-house duplicating | $11,295.71 |
| | |
| Total | $56,164.54 |

1

# AMY F. SCARR, S.C.
### ATTORNEY AT LAW

23 North Pinckney Street, Suite 310                                    Telephone 608/255-6610
Madison, Wisconsin 53703                                               Facsimile 608/255-6710

---

### Fees and Costs of Attorney Amy F. Scarr re: Markham, et al. v. White, et al., Case No. 95 C 2065

#### Fees

Hourly rate:  $175.00

Hours worked:  862.7

Fees:  $175.00/hr x 862.7 hrs =                                        $150,972.50

#### Costs

| | | |
|---|---|---|
| Photocopies | $ 188.54 | |
| Postage | 217.86 | |
| Long-distance telephone charges | 592.98 | |
| Travel and food expenses | 353.28 | |
| Cassette tapes | 25.32 | |
| | | $  1,377.98 |

---

**Total**                                                             **$152,350.48**

PLAINTIFF'S EXHIBIT

5/29/2002                                          MARKHAM.xlsTIME

## #795: Markham :  5/29/2002

Attorney/paralegal time: inception through 4/30/2002

| Atty | Hours | Rate | Fee |
|---|---|---|---|
| Galland | 4.5 | $ 375.00 | $ 1,687.50 |
| Miner | 2.0 | $ 375.00 | $ 750.00 |
| Siskind | 1190.5 | $ 350.00 | $ 416,675.00 |
| Cummings | 870.6 | $ 290.00 | $ 252,474.00 |
| Belcaster | 13.2 | $ 255.00 | $ 3,366.00 |
| Mange | 50.1 | $ 225.00 | $ 11,272.50 |
| Shapiro | 18.3 | $ 225.00 | $ 4,117.50 |
| Beyer | 66.3 | $ 205.00 | $ 13,591.50 |
| Eberle | 47.3 | $ 205.00 | $ 9,696.50 |
| Willenson | 81.4 | $ 215.00 | $ 17,501.00 |
| Strauss | 0.3 | $ 330.00 | $ 99.00 |
| Figueredo | 0.8 | $ 205.00 | $ 164.00 |
| Austin | 97.1 | $ 205.00 | $ 19,905.50 |

## TOT ATTY FEES                             $   751,300.00

| Paralegal | Hours | Rate | Fee |
|---|---|---|---|
| Choi | 3.3 | $ 90.00 | $ 292.50 |
| Hauge | 9.0 | $ 90.00 | $ 810.00 |
| Howes | 5.8 | $ 90.00 | $ 517.50 |
| Herbsleb | 35.7 | $ 90.00 | $ 3,213.00 |
| Bessette | 4.0 | $ 90.00 | $ 360.00 |
| Giddings | 12.0 | $ 90.00 | $ 1,080.00 |

## TOT PARALEGAL FEES                      $     6,273.00

| | |
|---|---|
| Disbursed costs through 4/30/02 | $    44,868.83 |
| In-house duplicating through 4/30/02 | $    11,295.40 |
| Total Costs | $    56,164.23 |



PLAINTIFF'S
EXHIBIT

C

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DENISE MARKHAM, and MARION MORGAN, )
on behalf of themselves, and all )
others similarly situated, )
                          )
          Plaintiffs, )
                          )        Case No.:  95 C 2065
      v. )
                          )        Judge Joan Humphrey Lefkow
FRANCIS E. WHITE, MELVIN O. )
SCHABILION, MICHAEL FLANAGAN, SAUL )
"BUDDY" WEINSTEIN, NORBERT KUKSTA, )
and Other Unknown Defendants, in )
their individual capacities, )
                          )
          Defendants. )

## NOTICE OF CLASS ACTION AND PROPOSED CASH
## SETTLEMENT AND SETTLEMENT HEARING

ATTENTION:  ALL WOMEN WHO ATTENDED DEA-SPONSORED TRAINING
SEMINARS BETWEEN APRIL 5, 1993 AND APRIL 5, 1995 WHO WERE OR MAY
HAVE BEEN SUBJECTED TO SEXUAL HARASSMENT.  THIS NOTICE DESCRIBES A
SETTLEMENT OF A CLASS ACTION WHICH, IF APPROVED BY THE COURT, MAY
WILL RESULT IN PAYMENT TO YOU.  PLEASE READ IT CAREFULLY.

### WHAT IS THIS LAWSUIT ABOUT?

On April 5, 1995, plaintiffs Denise Markham, Marion Morgan, and Mary Lou

Ricksecker, police officers employed by the City of Madison, Wisconsin, began this lawsuit by

filing a class action complaint against the United States Drug Enforcement Administration

("DEA"), the United States, and DEA agents Francis E. White, Melvin O. Schabilion,

Michael Flanagan, Saul "Buddy" Weinstein, and Norbert Kuksta ("the individual defendants").

They claimed that the individual defendants:  (1) conspired to, and repeatedly did, subject



them and other female seminar participants to offensive and intimidating conduct on account of their sex during the course of DEA-sponsored drug training seminars directed by them, and (2) ignored complaints made by the plaintiffs and the others, refused to desist from their offensive conduct, and destroyed written seminar evaluations on which many of the women's complaints were registered. Plaintiffs' complaint alleged that these actions by the defendants denied them and other similarly situated female participants the equal protection of the laws guaranteed them by the Due Process Clause of the Fifth Amendment United States Constitution and 42 U.S.C. §1985(3), that they did so by denying the women access to the training benefits equal to those provided their male counterparts, and that the plaintiffs and their fellow participants suffered emotional distress as a result. Plaintiffs sought damages and injunctive relief on behalf of themselves and a class of other women who were subjected to harassment at defendants' seminars.

After the DEA imposed discipline on each of the individual defendants, it and the DEA and the United States moved successfully for dismissal from the lawsuit on sovereign immunity grounds. The individual defendants denied plaintiffs' allegations, and opposed the lawsuit vigorously over several years. Other litigation followed. The individual defendants filed a civil defamation lawsuit against the named plaintiffs and their attorneys in state court; one of the five defendants cross-claimed against the others in the class action; and two of the named plaintiffs and two class members sued the United States under the Federal Tort Claims Act ("FTCA") in federal courts in Minnesota and Wisconsin.

In January 2002, subject to this Notice process and the approval of the United States District Court, and to avoid the risks, delays and uncertainties of further litigation, the parties

2

reached a settlement of all claims.

While the Court has given preliminary approval to the Settlement, it has not made any determination whether there is liability of any of the defendants or what the outcome of this lawsuit would be. And while the defendants have agreed to the settlement, this does not mean that they have admitted that their conduct was unlawful.

The purpose of the Notice is to explain what the proposed Settlement provides, and to explain your rights to (1) participate in the Settlement if it is finally approved by the Court, and (2) object to the Settlement in writing if you believe it is unfair.

## THE TERMS OF THE SETTLEMENT

The terms of the proposed Settlement are:

Monetary Payments. The Settlement provides a total of two hundred seventy-five thousand two hundred fifty dollars ($275,250) for settlement of the plaintiffs' claims in the class action and FTCA actions (including their claims for attorneys' fees): $75,000 from the United States, and $200,250 from the individual defendants. The individual defendants and the plaintiffs have agreed further to release each other (and the plaintiffs' counsel) from all asserted claims. These released claims include all claims for damages, attorney's fees, and costs asserted by plaintiffs and their counsel against the individual defendants in this class action, Defendant Weinstein's cross-claim for contribution against the other four defendants, and the claims brought by the five individual defendants against the named plaintiffs and their counsel in the state court action.

Class Member Awards.

In determining the amount of each class member's award under the Settlement

Agreement (if any), class counsel evaluated the claims of every class member who has asserted a claim based on each claim's strengths and weakness, reported these valuations directly to each one of the claiming class members, along with the method used to calculate them and the range of claim values the method generated for the class overall, and obtained from each individual claimant her consent to the settlement amount proposed on her behalf. The amounts proposed and agreed to were as follows:

Named Plaintiffs[1]

| | |
|---|---|
| Denise Markham | $40,000 |
| Marion Morgan | 25,000 |

FTCA Plaintiffs
| | |
|---|---|
| Elissa Umpierre | 8,000 |
| Evangeline Devlin | 7,000 |

Remaining Claiming Class Members
| | |
|---|---|
| Kimberly McGovern (Formerly Travis) | 11,000 |
| Shannon Schepp | 10,000 |
| Tina Virgil | 7,000 |
| Denise Bechtold | 5,000 |
| Amy Blackwood | 5,000 |
| Kathy Franko | 5,000 |
| Edie Washington | 5,000 |
| Gloria Anderson | 1,000 |
| Mary Hodge | 1,000 |
| Mary Byrne | 1,000 |
| Sheila Fulks | 1,000 |

If the proposed settlement is approved, these are the amounts that will be distributed among the claiming class members. Class members who disavowed having suffered any injury and/or

---

[1] The claim of one of the initial named plaintiffs (Mary Lou Ricksecker) was dismissed by the Court as untimely.

otherwise declined to assert claims will not receive payment from the fund.

Attorney's Fees and Reimbursement For Litigation Costs. The remainder of the Settlement Fund will be paid to plaintiffs' counsel as reimbursement of their litigation costs (which total approximately $56,000) and compensation for the time. The total amount remaining for this purpose, $143,250, comprises a small fraction of the attorney's fee actually incurred. As of the date settlement negotiations began, plaintiffs' counsel had incurred fees plus expenses of nearly *five times* this amount in pursuing plaintiffs' class claims, *i e.* defending against a series of defendant motions to dismiss, opposing an interlocutory appeal, pursuing class certification, and completing pre-trial discovery (including written interrogatories and document requests and approximately 40 depositions taken throughout the Midwest and the District of Columbia). Plaintiffs' counsel have submitted a separate application to the Court for approval of their fee.

Dismissal of Actions with Prejudice. If the Court grants final approval of this Settlement, then the awards set forth in this notice will be distributed to the named plaintiffs and claiming class members, and the claims of all class members (i.e., defined by the Court as the class of other women who were subjected to harassment at defendants' seminars) will be dismissed with prejudice. In addition, actions brought by defendant Weinstein against his co-defendants and by all five individual defendants against the plaintiffs and their counsel will also be dismissed with prejudice.

## VALUE OF THE SETTLEMENT
## AND BENEFITS TO THE CLASS

It is intended that $132,000 will be distributed to the 15 claiming class members identified through the parties' discovery in these proceedings, pursuant to the schedule of payments set out above. Plaintiffs and class counsel believe, however, that the immediate recovery provided by this Settlement is fair and reasonable, and far more desirable than continued litigation, which is fraught with risks and delay. To recover from every one of the individual defendants, plaintiffs will likely have to prove a conspiracy among them. As defendants are individuals, plaintiffs may have to levy against personal assets to execute any judgment resulting from a jury's award. And in order to recover from the government defendants, plaintiffs will have to file an appeal to reverse this Court's dismissal order on sovereign immunity grounds. In the view of plaintiffs' counsel, the defendants' agreement to provide sufficient monies to compensate the claiming class members for their injuries has made settlement plainly the more reasonable course. In short, class counsel believe that the benefits of settling for a substantial recovery today outweigh the speculative possibility of recovery in the distant future and, all the more, the risk of recovering nothing at all if plaintiffs' claims are ultimately dismissed or found to be without legal merit.

## FAIRNESS HEARING

The Court will hold a fairness hearing at 10:00 a.m. on June 7, 2002 at the United States District Courthouse, 219 S. Dearborn, Chicago, Illinois 60604, Room 1925, to consider the fairness, adequacy, and reasonableness of the terms of the Settlement. If the Settlement is not approved, then no monetary distribution will take place and this lawsuit will return to its pre-settlement status.

6

As an eligible class member, you have two choices. First, you may choose to participate in the Settlement. **IF YOU MAKE THIS CHOICE YOU DO NOT NEED TO CALL OR DO ANYTHING.** Once the Settlement is finally approved, plaintiffs' counsel will distribute the settlement monies as provided herein. In exchange for the benefits of the Settlement, your claims against the defendants will be dismissed. (While you are free to retain separate counsel at your own expense, you will in any case be represented as a class member by class counsel.)

Second, if you believe that the Settlement or any of its terms are unfair, you may object by submitting a written statement of the reasons for your objection by mailing it to the Clerk of Court, United States District Courthouse, 219 South Dearborn, Chicago, Illinois 60604, with a copy to class counsel at Miner, Barnhill & Galland, P.C., 44 East Mifflin Street, Suite 803, Madison, WI 53703, and counsel for the Individual Defendants, Debra L. Roth, Esq., Shaw, Bransford, Veilleux & Roth, 1100 Connecticut Avenue, N.W., Suite 900, Washington, D.C. 20036; and David Schippers, Esq., Schippers & Bailey, 20 North Clark Street, Suite 3600, Chicago, IL 60602. Objections must be postmarked on or before May 17, 2002.

### HOW CAN I LEARN MORE?

For more information about the Settlement and lawsuit, you may review the pleadings, the Settlement documents and other papers at the office of the Clerk of the Court, United States District Courthouse, 219 South Dearborn, Chicago, Illinois 60604 or call class counsel Sarah Siskind at Miner, Barnhill & Galland, P.C., 44 East Mifflin Street, Suite 803, Madison, WI 53703, (608) 255-5200.

PLEASE **DO NOT** ADDRESS ANY QUESTIONS ABOUT THE SETTLEMENT OR THE LAWSUIT TO THE CLERK OF THE COURT OR TO THE JUDGE.  IF YOU HAVE SPECIFIC QUESTIONS ABOUT THE LAWSUIT, WRITE TO CLASS COUNSEL AT THE ADDRESS ABOVE.

By the Court, this 17th day of April, 2002.

Clerk of Court

United States District Court

## CERTIFICATE OF SERVICE

The undersigned, under penalty of perjury, certifies that on June 4, 2002, true and correct copies of the above and foregoing **PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND AWARD OF ATTORNEY'S FEES AND COSTS** were served on counsel named above by fax and regular mail.

*Susan E. Michel*